IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEPHANIE HOOVER,

        Plaintiff,                        No. CIV S-09-2586 DAD PS

        vs.

MICHAEL J. ASTRUE,                    <u>ORDER</u>
Commissioner of Social Security,

        Defendant.
_____/

        Plaintiff is proceeding pro se in this social security action. The case was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's motion is granted, and the decision of the Commissioner of Social Security (the Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        On April 26, 2004, plaintiff filed her first applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income (SSI) under Title XVI of the Act, alleging disability beginning January 1, 2003. (Transcript (Tr.) at 59.) Plaintiff alleged that she was disabled due to poor vision and chronic neck and back pain; she also reported suffering from migraine headaches and asthma, and

1

1  claimed a history of motor vehicle accidents in 1999 and 2003.  (Tr. at 61-64.)  Plaintiff's
2  applications were denied initially on October 29, 2004, and upon reconsideration on February 24,
3  2005.  (Tr. at 59.)  Pursuant to plaintiff's request on March 14, 2005, a hearing was held before
4  Administrative Law Judge (ALJ) Marilyn S. Mauer on May 10, 2006 in Klamath Falls, Oregon.
5  (Id.)  Plaintiff appeared on her own behalf and testified at the hearing, as did a friend of
6  plaintiff's and a vocational expert.  (Id.)  In a decision dated September 20, 2006, the ALJ found
7  plaintiff not disabled from January 1, 2003, through the date of the decision.  (Tr. at 56-68.)

8  Plaintiff did not appeal the September 20, 2006 decision to the Appeals Council
9  but instead filed new DIB and SSI applications on September 28, 2006.  (Tr. at 108-19.)
10 Therein, plaintiff alleged that she became unable to work on January 31, 2004 because of back,
11 neck, and knee injuries, vision loss, neurological problems, and migraine headaches.  (Tr. at 115,
12 131.)  The new applications were denied initially on February 26, 2007, and upon reconsideration
13 on June 17, 2007.  (Tr. at 78-93.)  Pursuant to plaintiff's request, a hearing was held before ALJ
14 Mauer on August 22, 2008.  (Tr. at 94, 34-55.)  Plaintiff appeared at the hearing on her own
15 behalf and testified, as did a second vocational expert.  (Tr. at 34-35.)  In a decision issued on
16 February 11, 2009, the ALJ again found plaintiff not disabled.  (Tr. at 18-25.)  The ALJ entered
17 the following findings:

> 1. Ms. Hoover met the insured status requirements of the Social Security Act through March 31, 2007.
>
> 2. Ms. Hoover has not engaged in substantial gainful activity since January 31, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3. Ms. Hoover has the following severe impairments:  chronic neck and low back pain with no documented neurological deficits (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Ms. Hoover does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

/////

> 5. After careful consideration of the entire record, I find that Ms. Hoover has the residual functional capacity to perform light work as defined in 20 CFR404.1567(b) and 416.967(b) except she must be permitted to sit or stand at will to relieve pain symptoms.
>
> 6. Ms. Hoover is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. Ms. Hoover was born on February 23, 1975 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. Ms. Hoover has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Hoover is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering Ms. Hoover's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. Ms. Hoover has not been under a disability as defined in the Social Security Act, from January 31, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 20-25.)

On May 22, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making that decision the final decision of the Commissioner. (Tr. at 7-14.) An attorney retained by plaintiff on May 11, 2009, requested an extension of time to allow counsel to review the merits of plaintiff's claims for a possible action in the district court. (Tr. at 4, 6.) On August 11, 2009, the Appeals Council granted a 30-day extension of time to file a civil action. (Tr. at 1.) Pursuant to the extension of time, plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing a pro se complaint in this action on September 16, 2009.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper

legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

/////

1
2
3
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

4
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

5
6
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

7 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

8     The claimant bears the burden of proof in the first four steps of the sequential
9 evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the
10 sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098
11 (9th Cir. 1999).

12     **APPLICATION**

13     Plaintiff argues that the ALJ made the following six errors in the February 11,
14 2009 decision: (1) the ALJ admitted that plaintiff has severe impairments but failed to credit
15 evidence showing that plaintiff has neurological deficits; (2) the ALJ found that the May 2005
16 MRI of plaintiff's brain "was within normal limits" despite "punctate/focal zones of increased
17 signal in the left frontal periventricular white matter and gray-white matter junction"; (3) the ALJ
18 found no evidence of muscle weakness despite the opinion of plaintiff's physical therapists that
19 plaintiff has severe weakness through all parts of her body; (4) the ALJ found that plaintiff's
20 ocular health appeared normal despite evidence that she does not have 20/20 vision and her
21 vision cannot be corrected; (5) the ALJ has been inconsistent in her findings of severe and non-
22 severe impairments; and (6) the ALJ found that plaintiff could perform a range of light work, but
23 an assessment by a physical therapist in March 2009 found plaintiff unable to do light or
24 sedentary work. The court addresses each argument below.
25 /////
26 /////

I.      **Whether the ALJ Erred in Not Finding Neurological Deficits**

Plaintiff contends that the ALJ failed to acknowledge substantial medical evidence of neurological deficits. She asserts that a "neurological deficit" is any of the following: weakness, paralysis, impaired hearing or vision, loss or disturbance of sensation, impairment or loss of speech, tremors and gait problems, all of which are caused by damage to the nervous system. Plaintiff contends that she has "some of these problems all of the time, and the rest of them come and go." Plaintiff argues that two brain MRI's done four and a half years apart at two different hospitals and an EEG conducted at a third hospital show damage to the covering on her nerves. Plaintiff believes this damage makes her vision uncorrectable.

Although defendant served a paper copy of the administrative record on plaintiff, plaintiff has not cited specific evidence in the record in support of her argument in this regard. It appears that plaintiff is referring to the brain and orbit MRI taken by Donald J. Widder, M.D. on May 11, 2005 (tr. at 228-29); the MRI of plaintiff's brain taken by Reed Grabow, M.D. on August 9, 2007 (tr. at 497-98), and the Holter ECG taken in December 2003 and reviewed by John L. Keltner, M.D. on May 7, 2008 as part of a comprehensive neuro-ophthalmologic evaluation of plaintiff (tr. at 455-70). The record also includes a head CT scan taken on February 11, 2004, by Jeffrey W. Chudoba. M.D. (Tr. at 360.)

The CT scan revealed no midline shift or hydrocephalus, no intraxial masses or abnormal or excessive fluid collections, no evidence of intracranial hemorrhage, and no posterior fossa masses, leading Dr. Chudoba to form an impression of "[n]egative head CT." (Tr. at 360.) The 2005 MRI by Dr. Widder reflected "unremarkable appearance of the optic nerves and tract" and "unremarkable study of the orbits. (Tr. at 229.) The 2007 MRI by Dr. Grabow noted entirely normal findings and gave an impression of "[n]egative MRI of the brain and orbits with gadolinium." (Tr. at 497.) In 2008, Dr. Keltner reviewed plaintiff's imaging history, including the CT scan, three MRI's, and the ECG, and concluded that all MRI's "have been normal" and the ECG was "within normal limits." (Tr. at 457.) Absent from all of these imaging reports and

reviews is any indication of damage to the covering on plaintiff's nerves or any reference to neurological deficits. Therefore, on this record, the court finds substantial evidence supporting the ALJ's finding of no neurological deficits.

**II. Whether the ALJ Erred in Finding the May 2005 MRI Within Normal Limits**

Plaintiff argues that the 2005 MRI report did not state that her brain was within normal limits and instead noted "punctate/focal zones of increased signal in the left frontal periventricular white matter and gray-white matter junction," which, according to plaintiff, means she has lesions associated with either stroke or multiple sclerosis.

Plaintiff' reading of the 2005 MRI report is incomplete, at best. While Dr. Widder did form an impression of "punctate/focal zones of increased signal in the left frontal periventricular white matter and gray-white matter junction," he added "with non-specific features" and noted "no enhancing/mass lesion seen." (Tr. at 228.) He also explained that the punctate/focal zones of increased signal "could be related to prior trauma, normal variant, or zone of demyelination, ischemia, or infarction." (Id.) Nothing in Dr. Widder's report supports plaintiff's conclusion that the finding of punctate/focal zones of increased signal means she has lesions associated with either stroke or multiple sclerosis. Plaintiff simply ignores the other possible causes, including "normal variant."

Plaintiff also ignores the fact that Dr. Widder's impression of punctate/focal zones of increased signal is followed by his impression of "unremarkable appearance of the optic nerves and tract" and "unremarkable study of the eyes." (Tr. at 229.) Dr. Widder's third impression concerned sinus membrane thickening. (Id.) As noted above, Dr. Keltner reviewed multiple MRI's as part of his neuro-ophthalmologic evaluation of plaintiff, and he specifically found that the MRI taken by Dr. Widder in May 2005 was "wnl," i.e., within normal limits. (Tr. at 457.) Thus, the court also finds substantial evidence supporting the ALJ's finding that plaintiff's 2005 MRI was within normal limits.

/////

**III. Whether the ALJ Erred in Finding No Evidence of Severe Muscle Weakness**

Plaintiff argues that she made an appointment with Redding Physical Therapy for the purpose of getting a professional opinion about her functional abilities and "they made it very clear that Plaintiff has severe weakness through all parts of her body."

Plaintiff indicates that her appointment took place on March 6, 2009. Clearly the ALJ did not err in failing to consider evidence that was not in existence on February 11, 2009, when she issued her decision. The record reflects that plaintiff submitted additional evidence to the Appeals Council, as noted in the May 22, 2009 Notice of Appeals Council Action and in the attached Order making Exhibit B21F part of the record as Exhibit AC-1. (Tr. at 7, 10.)[1] Thus, it appears that the Appeals Council considered this document and made it part of the record but determined that the information did not provide a basis for changing the ALJ's decision. (Tr. at 7-8, 10.)

Turning to the document itself, the court notes that it bears the letterhead of "RPTC, Work Injury Division," in Redding, California, and is titled "Essential Functions Test." Entries on the form indicate that plaintiff can perform many postural activities occasionally, can lift 10 pounds occasionally and carry 5 pounds occasionally, and can pull 7 to 10 pounds. Many items on the form, such as plaintiff's tolerance for sitting, standing, and walking, were left blank, without explanation. Plaintiff's range of motion was within normal limits for her upper and lower extremities and for her back. A range of motion deficit was found only with respect to plaintiff's trunk. Although strength measurements for upper and lower extremities, right and left, are noted, they are not explained and apparently fell within normal limits. The form is not signed by the person who administered the tests, and no opinions are expressed concerning the findings.

---

[1] The Court Transcript Index identifies Exhibit B21F as "Claimant-supplied Evidence Exhibit AC-1" and indicates that it consists of 12 pages located in the transcript at pages 568-79. (Tr. at unnumbered Court Tr. Index page iii.) Although the last page of the transcript bearing a stamped number is 575, the fourth subsequent page, which should have been stamped 579, appears to be a record of plaintiff's March 6, 2009 appointment.

The court finds that this cursory, incomplete, unsigned one-page record of testing in 2009, two years after plaintiff's date last insured for disability insurance benefits, fails to support a determination that plaintiff suffered from severe extremity muscle weakness prior to her date last insured. In deciding not to consider plaintiff's muscle weakness severe, the ALJ relied primarily on two evidentiary sources. (Tr. at 21.) Ajit S. Garcha, M.D. conducted electromyography and nerve conduction tests of plaintiff's upper and lower extremities on August 9, 2007 and determined that the tests were normal studies. (Tr. at 504-09.) When consultative examiner Granville H. Marshall, Jr., M.D. examined plaintiff on February 5, 2007, he noted that plaintiff walked without any difficulty and was in no apparent distress. (Tr. at 392.) Moreover, Dr. Marshall found plaintiff's cranial nerves II to XII grossly intact and noted no muscle atrophy. (Tr. at 392-93.) He found sensory and strength deficits in various degrees in some extremities but did not assess any functional limitations arising from those deficits. (Tr. at 392-94.) Based on this record, the court finds substantial evidence supporting the ALJ's finding that plaintiff's muscle weakness was not severe.

**IV. Whether the ALJ Erred in Finding that Plaintiff's Ocular Health Appeared Normal**

Plaintiff admits that extensive testing showed her ocular health was normal except for macula and paramacular thinning, but she contends there must be a neurological reason for the fact that she does not have 20/20 vision and her vision cannot be corrected to 20/20.

In determining that plaintiff did not suffer from a severe visual impairment, the ALJ relied on the testing, findings and opinions of Mark Fay, M.D., an ophthalmologist who determined in November 2004 that plaintiff's visual acuity was 20/30 in each eye, with questionable effort on her part, and that plaintiff had no specific ophthalmologic abnormalities other than a need for corrective lenses (tr. at 219); Thomas Krauel, O.D., an optometrist who examined plaintiff in November 2004, found her to be mildly myopic and best corrected to 20/25 in her right eye and 20/30 in her left, and concluded that her "[o]cular health and other basic visual functions appeared to be within normal limits for her age" and her "visual system should

not hinder her in regard to any physical or mental activity" (tr. at 382); Dr. Keltner, the neurologist who conducted a neuro-ophthalmologic examination of plaintiff in May 2008 and found macular thinning but no functional limitation associated with her complaint of decreasing vision (tr. at 456-57). (Tr. at 21.) The ALJ rejected the opinion of B.P. Musselman, D.O. in August 2008 that "[p]robably the majority of the time [plaintiff] is legally blind" (tr. at 516) because Dr. Musselman is not an ophthalmologist and did not appear to have based his opinion on any tests or other acceptable diagnostic techniques. (Tr. at 21.)

Based upon the aspects of the record discussed above, the court finds that substantial evidence supports the ALJ's determination that plaintiff's ocular health was normal.

**V.   Whether the ALJ Erred in Her Findings Regarding Severity of Impairments**

Plaintiff complains that ALJ Mauer "has proved to be inconsistent." In support of this allegation of inconsistency, plaintiff states that the ALJ claims in her second decision that there is no medical evidence of severe impairments after having found two and a half years previously that there was medical evidence of severe impairments.

Plaintiff is in error. In both decisions, the ALJ found that plaintiff has the severe impairment of chronic neck and back pain with no documented neurological deficits or findings. In both decisions, the ALJ discussed the other impairments claimed by plaintiff and found them to be not severe. Although the discussion of the non-severe impairments varies in the two decisions, the variations arise from differences in the evidence before the ALJ at the time of each decision. If there is any inconsistency, plaintiff has failed to articulate it and has also failed to demonstrate any reversible error. Moreover, the only decision before the court for judicial review is the ALJ's decision dated February 11, 2009. For these reasons, plaintiff is not entitled to summary judgment on her conclusory allegation of inconsistency in the ALJ's decisions rendered in response to her applications for benefits.

/////

/////

### VI. Whether the ALJ Erred in Finding Plaintiff Capable of Performing Light Work

Plaintiff claims that the assessment she obtained from Redding Physical Therapy in March of 2009, after the ALJ had issued her decision, proves plaintiff's inability to do light or sedentary work because light work involves lifting 20 pounds and carrying 10 pounds and also requires a good deal of walking or standing, or sitting while pushing and pulling, while the assessment limits her to lifting 5-10 pounds and carrying 5 pounds, limited standing, walking, and pulling, and no pushing at all. She argues that she cannot do sedentary work and has been assessed as being limited to only occasional fine manipulation and only occasional sitting.

A claimant's residual functional capacity (RFC) is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). The Commissioner may satisfy his burden of showing that the claimant can perform past relevant work or other types of work in the national economy, given the claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

The document relied upon by plaintiff as evidence of her functional limitations has been discussed by the court above. Having carefully reviewed the ALJ's analysis of plaintiff's residual functional capacity and the ALJ's determination that plaintiff can perform light work if she is permitted to sit or stand at will, the court finds the determination supported by substantial evidence in the record. (See tr. at 22-25.) The unsigned assessment obtained by plaintiff in March 2009 is not consistent with the record as a whole and fails to support plaintiff's argument. Plaintiff is not entitled to summary judgment in her favor on this argument.

### CONCLUSION

The court reiterates the legal standard set forth above. The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by

substantial evidence in the record as a whole and the proper legal standards were applied. Schneider, 223 F.3d at 973; Morgan, 169 F.3d at 599.  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller, 770 F.2d at 847. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock, 240 F.3d at 1162; Jones, 760 F.2d at 995.  A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague, 812 F.2d at 1229-30, and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart, 856 F.2d at 1338.

The court has determined that the ALJ's findings are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  The evidence relied upon is relevant evidence that a reasonable mind might accept as adequate to support the conclusion in question.  After weighing the evidence that supports and the evidence that detracts from the ALJ's conclusions, the court finds substantial evidence supported the ALJ's findings in this case.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 20) is denied;

2. Defendant's cross-motion for summary judgment (Doc. No. 21) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 23, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.socsec\hoover2586.order